### THE NEW YORK.

(District Court, S. D. New York. February 17, 1898.)

COLLISION IN SLIP—CANAL BOAT IMPALED ON PROPELLER—WARPING—NOTICE.

While the steamer New York was being carefully warped across the slip where she had been moored, a canal boat was found to be impaled upon one of the steamer's propeller blades, and was freed by some backward turning of the propeller; *held* (1) that upon the contradictory testimony the damage did not arise from any careless or improper handling of the steamer, but from the incautious movements of the canal boat; (2) that the warping of the steamer was not naturally calculated to do damage, and that no prior notice of intent to move her was necessary.

This was a libel in rem by James I. Collins against the steamship New York to recover for damages occasioned to a canal boat and cargo by becoming impaled on the steamship's propeller in her slip.

Carpenter & Park, for libelant.

Robinson, Biddle & Ward, for claimant.

BROWN, District Judge. On the 16th day of September, 1896, between 3 and 4 o'clock in the afternoon, when the large twin screw steamship New York, 564 feet long, was being pulled sideways across the slip from pier 15 towards pier 14 North river, bow in, it was

found that the canal boat Pat Bowen, laden with 765 barrels of cement, was being pulled across with the steamship. Subsequent examination showed that although the steamer's propeller had not been moved, the canal boat was impaled upon one of the blades of the steamer's port propeller, on her port side, and that the end of the propeller blade had passed through the bottom of the canal boat, making a cut about 4 feet long at right angles with the keel, 12 feet aft of the stem, and beginning at a point about four inches from the edge of the bottom on the starboard side. She could not be pulled off, and was extricated by turning the propeller back a little, but before she could be beached she sank. The above libel was filed to recover the damages, which it is alleged arose through the negligence of the steamship. The answer denies any negligence on her part.

There is no direct or positive proof how the accident came about. Two theories are suggested. The defendant argues that the canal boat came along side of pier 15, running up between the dock and the floating logs which guarded the steamer's propeller, forced the logs aside and finished her loading while lying over the end of the port propeller blade, and by the increased draught in loading drove the propeller blade through her bottom. The libelant contends that the canal boat was not at any time lying over the blade of the propeller, and argues that the accident could not have arisen in that way, because, upon the estimate of the defendant's expert, the end of the propeller blade would be about 14 inches deeper in the water than the canal boat when fully loaded. The libelant's theory is, that in the operation of hauling the steamship across the slip, she dropped back, and by hauling on the bow sooner than upon the stern, her stern was swung towards pier 15, so that the propeller blade was thereby carried beneath the canal boat, and that the strain of the hawser when the subsequent pulling on the stern commenced, caused the steamer to careen a little to starboard, sufficiently to lift the port propeller blade and thrust it through the bottom of the canal boat.

Both of these theories are physically possible. Either of them would account for the accident, and either might be adopted if the facts were sufficient to sustain it. But the evidence is so doubtful that I find it impossible to arrive at a positive finding as to either. The burden of proof rests upon the libelant to show negligence in the steamer. So far as the alleged negligence consists in the supposed dropping astern, and the swinging of the propeller under the canal boat, I think the clear weight of proof is to the contrary. Great pains, it was testified on the part of the ship, were taken to move her evenly; a range was observed and care taken to slacken, if either end of the ship was found to be moving faster than the other; and the line from the stern to pier 14 was kept all the time taut, or nearly so. Upon this positive testimony of several witnesses, it is not credible that the ship made any material sternway, or swing to port at her stern; certainly nothing like 12 to 15 feet to port, as would be necessary to be found, if the libelant's witnesses are correct in saying that the blade was 10 to 13 feet off and abreast of the canal boat's starboard bow. The blade seen by those witnesses may have been the opposite blade, the top of which would be about 12 feet away,

while the end of the port blade was under the canal boat's bottom. There is no doubt, on the libelant's evidence, that the bow of the canal boat ran up the slip beyond the propeller blade; Collins, the man in charge, says the bow was 6 feet ahead of it. The damage shows it was then 12 feet. Other evidence shows that before the accident, the canal boat was close along side the fore and aft log which was intended to guard the propeller. The theory that the steamer dropped astern 10 or 12 feet after the moving began and swung her stern to port as much more, so that her propeller blade ran under the canal boat, and that by a subsequent strain on the stern hawser the steamer was listed to starboard so as to lift her propeller blade and thus inflict the damage, involves also such a lapse of time between pulling on the stern and on the forward hawsers as to be wholly incompatible with the management of the steamer testified to by her officers, and incompatible with the probabilities of the case under the circumstances proved. So much, therefore, of the libelant's claim of negligence, I must regard as disproved.

I must find, therefore, that the canal boat got over the steamer's propeller blade by the movement of the canal boat up the slip. I do not think it material to consider when, how or why she got into such a position, as it is clear that it was not through any fault of the steamer, or through any lack of care on the steamer's part to indicate the position of the propeller blade, which was done by a log across the stern and by others running fore and aft on each side. It was a position that the canal boat had no right to take, and was at her own risk. This would not of course justify the steamer in inflicting any heedless or wanton injury; but the evidence on the part of the steamer clearly absolves her from any such charge.

The movement of the steamer across the slip in the way testified to, was not a movement reasonably likely to produce any injury to other boats. It did not, therefore, call for any express notice; and there is no evidence that prior to moving, Officer Young, who was in charge of the movement, suspected that the canal boat lay over the propeller. He testified that 15 minutes or a half an hour before, he observed the canal boat, and that she was then abaft of the propeller and in a safe place. Her captain, quite a young man, was then hauling on the line, and the officer testifies that he cautioned him against moving further up the slip. The captain denies this caution and also denies other cautions testified to by two other witnesses; but he states that the canal boat was 6 feet ahead of the propeller, and subsequent examination shows that at the time of the accident it was 12 feet ahead. Officer Young was mistaken, therefore, as to the precise position of the bow of the canal boat 15 or 30 minutes before the ship was moved, or else the boat was moved up further afterwards, as that officer contends it was. It does not seem to me necessary to determine the precise facts in these respects. Since the movement of the steamer was one which she was entitled to make and was not naturally calculated to inflict injury on other boats, if the damage. was produced through a slight list of the steamer to starboard, owing to the strain of the hawser and the slight lifting of the port propeller blade while the canal boat lay over it, a contention

which rests upon argument, and not upon evidence, the result was not such as was to be reasonably anticipated, and is to be ascribed to the imprudence and carelessness of the canal boat, rather than to any negligence of the steamer.

One circumstance in connection with the final release of the canal boat, seems to me to favor the defendant's theory that the canal boat sank upon the blade while loading; namely, that the blade was finally extricated by a little backward turn of the propeller, after other efforts were unavailing to separate the boat. Some time before this the strain on the hawsers had been stopped, and any list of the steamer to starboard must have been thereupon immediately righted. Had the contact with the propeller blade arisen solely from the lifting of the blade by the steamer's list to starboard, the blade would naturally have been at once drawn out from the canal boat's bottom the moment the steamer righted on an even keel, and this would have occurred as soon as the strain on the hawsers was stopped. The fact that the boat was not then released, points to the probability that the accident did not happen from any list by the steamer, and that the list, if any, was small.

I must find, therefore, that no cause of action has been made out against the steamer, and that the libel should be dismissed with costs.